### Elijah Jennings v. Donald Legg.

VERDICT—*when not disturbed as against the evidence.* A ver-
dict based upon close and conflicting evidence will not, in the ab-
sence of errors of law, be disturbed on review.

Trespass. Appeal from the Circuit Court of Edgar county; the
Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this court
at the November term, 1906. Affirmed. Opinion filed June 1, 1907.

F. C. VAN SELLAR, for appellant; H. VAN SELLAR,
of counsel.

FRANK T. O'HAIR and F. W. DUNDAS, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion
of the court.

Elijah Jennings brought suit in trespass against
Donald Legg, in the Circuit Court of Edgar county,
to recover damages for an injury alleged to have been

inflicted upon his, Jennings', person by Legg. Upon a trial, the jury returned a verdict of not guilty, upon which the court rendered judgment against Jennings and he appealed.

Appellant contends that the verdict was contrary to the evidence and that the trial court committed error in its rulings in admitting testimony upon the part of appellee.

It appears from the evidence that appellant and appellee lived upon adjoining farms; that appellant's home farm was to the west of the farm occupied by appellee, who was a tenant of his father, and that appellant also owned another farm which lay to the north and east of appellee's land and across the road therefrom; that appellant on the thirtieth day of April, 1905, was returning to his home farm from his land or farm east and north of appellee's, and was crossing the lands of appellee when appellee fired upon appellant with a shot gun. The affray was witnessed by no one except the parties to the suit, although a Mr. Bonwell and his son, who were about thirty rods away, heard the report of the gun and saw the parties in the field. Neither Mr. Bonwell nor his son heard what was said by either Jennings or Legg at the time of the trouble and did not go to the place where the shooting occurred. The most that can be said of the testimony of Bonwell and his son is that it shows that the shooting took place and that it took place in appellee's field.

Appellant testified that he crossed the Legg land in going back and forth between his home farm and the farm north and east of appellee to take care of his stock on the latter place; that it was the nearest way for him to go; that on the day in question he was crossing appellee's field to his home when appellee, without warning, fired upon him. Appellee testified that appellant had frequently gone across the field in question and in passing had taken corn therefrom; that in January and February, before the shoot-

ing took place, he told appellant not to go through his field, when appellant replied, "that he would kill him, that his old father was crazy and he would put him under the sod;" that on the day in question he went to the field and there told appellant "to drop the corn he was picking up" and leave the field, when appellant again said he would kill him; that "he threw his hand around to his hip pocket and said, 'I will kill you,' and made at me and I raised my gun and fired."

One Milton Scott testified that Jennings said to him, "I will kill you and Don Legg," and that he, Scott, believed that he had said to Legg, before the trouble took place, "to look out, because Jennings said he would kill him."

While we might be disposed to think that a verdict in favor of appellant could have been well sustained upon the evidence, or even that the evidence seemed to preponderate in favor of appellant's theory of the affray, yet the verdict is not so manifestly against the weight of the evidence that we are warranted in reversing the judgment on that account.

Appellant argues that the court committed error in admitting testimony upon the part of appellee to the effect that appellant had frequently crossed the Legg land and had made threats against appellee prior to the time of the trouble; that Legg's father was crazy and he would put appellee under the sod; and in permitting Scott to testify that Jennings had said to him that he would kill both him and Legg.

We find upon an examination of the record that most, if not all, of these matters were given in evidence in some form without objection. It is true that in some instances objections were made by appellant to the giving of the testimony upon the subjects named, yet the record discloses that testimony was given without objection to show that appellant crossed Legg's field in going to and returning from what was called the "Love farm;" also, that he was forbidden to do so on different occasions and that Jennings said to Legg,

prior to the time of the trouble, "Your old daddy is crazy, and I will put you under the sod." Appellant's objections and exceptions can be of no avail to him, made to questions of the above character, since he allowed other questions of the same import to be answered without objection. The record further shows that Scott's testimony to the effect that Jennings had said to him he would kill both him (Scott) and Donald Legg, was not allowed by the trial court to stand as evidence in the case until the witness further testified that he believed he had had a talk with Donald and had told him to look out because Jennings had said he would kill him.

The case seems to have been tried upon its merits, the evidence was very close and conflicting, that its determination depended solely upon the credibility of the witnesses and the weight to be given to their testimony. In such a case the verdict should not be disturbed unless some prejudicial error was committed. The record discloses no such error and the judgment is affirmed.

*Affirmed.*